HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
40 Paterson Street, PO Box 480
New Brunswick, NJ 08903
(732) 545-4717
Attorneys for Plaintiffs Laura Watson, Jerry Watson and Donna Watson

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON, NEW JERSEY

| | |
|---|---|
| Plaintiff,<br><br>DONNA WATSON, JERRY WATSON, and LAURA WATSON<br><br>vs.<br><br>Defendant,<br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UHIC HOLDINGS, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE, INC., AND PFIZER, INC. | CIVIL ACTION NO.<br><br>**COMPLAINT AND JURY DEMAND**<br><br><u>**ELECTRONICALLY FILED**</u> |

## I. INTRODUCTION

1. Plaintiffs Donna Watson, Jerry Watson, and Laura Watson bring this Complaint against Defendants, UnitedHealth Group Inc., United HealthCare Services, Inc., UHIC Holdings, Inc., United HealthCare Insurance Company, UnitedHealthcare, Inc., and Pfizer, Inc. pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA").

2. Plaintiff Laura Watson is a beneficiary of an employee healthcare plan, the Pfizer Medical Plan No. 542 ("the Plan"), sponsored and administered by Pfizer, Inc. ("Pfizer"), and partially or fully administered and/or insured by Defendant United Healthcare, Inc. ("United Healthcare") (See Summary Plan Description, attached as Exhibit A).

3. The Defendants' Plan is governed by ERISA, which, among other things, requires that those who administer the Plan comply with the terms and conditions of said Plan in making coverage determinations relating to the Plan's participants and beneficiaries.

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

4. As detailed below, Plaintiffs alleged that both ERISA and the Defendant Plan's terms were violated when Defendant made a determination that 24 hours a day/7 days a week private duty skilled nursing services were not a covered benefit for Laura Watson.

5. Furthermore, Defendant United Healthcare, Inc. failed to provide a full and fair review of Plaintiffs' claims, failed to provide a reasonable claims procedure, and failed to define or provide the "periodic, intermittent" healthcare it admitted is owed to Plaintiff Laura Watson under the terms of the Plan.

## II. JURISDICTION AND VENUE

6. **Subject Matter Jurisdiction**. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29, U.S.C. § 1132(e)(1).

7. **Personal Jurisdiction**. ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29, U.S.C. § 1132(e)(2). Defendant is a resident of the United States and subject to service in the United States; therefore, this Honorable Court has personal jurisdiction over them.

8. **Venue**. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29, U.S.C. § 1132(e)(2), because much of the conduct that is the subject of this lawsuit occurred within this District and Defendant conducts business within this District, either directly or through wholly owned and controlled subsidiaries.

## III. THE PARTIES

A. **Plaintiff**

9. Laura Watson is a 22 year-old woman who is a beneficiary of the United Defendants' and Pfizer's Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

10. Donna Watson and Jerry Watson are the parents of Laura Watson.

11. Plaintiffs reside in Hillsborough, New Jersey.

B. **Defendants**

12. UnitedHealth Group Inc. UnitedHealth Group Inc. ("UnitedHealth") is a

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

corporation organized under the laws of Minnesota, with its main New York metro office located at 2 Penn Plaza, 7th Floor, New York, New York. It provides, among other things, health benefit plans and services to national employers, public sector employers, mid-sized employers, and small businesses. Unitedhealth Group, Inc., BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=104673 (last visited February 14, 2013). Either itself or through its subsidiaries and affiliates, over which it exercises dominion and control, UnitedHealth administers group healthcare plans subject to ERISA ("United Plans") around the country.

13. United HealthCare Services, Inc. United HealthCare Services, Inc. provides directly or through its subsidiaries and affiliates, inter alia, health benefit plans and services for companies. United HealthCare Services, Inc., BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=996399 (last visited February 14, 2013). Its principal place of business is in Edina, Minnesota. United HealthCare Services, Inc. operates as a subsidiary of Defendant UnitedHealth.

14. UHIC Holdings, Inc. UHIC Holdings, Inc., which operates as a subsidiary of United HealthCare Services, Inc., is a holding company that "underwrites insurance plans to individuals and small to midsized employer groups" through its subsidiary Defendant United Healthcare Insurance Company. UHIC Holdings, Inc., BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=28957325  (last visited February 14, 2013). UHIC Holdings, Inc.'s principal place of business is in Edina, Minnesota.

15. United HealthCare Insurance Company. United HealthCare Insurance Company ("United Insurance") is a licensed insurance company organized under the laws of Connecticut, with its main New York metro office located at 2 Penn Plaza, 7th Floor, New York, New York. United Insurance, either directly or through its subsidiaries and affiliates, "underwrites insurance plans to individuals and small to midsized employer groups." United Healthcare Insurance Company, BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/ private/snapshot.asp?privcapId=4157534 (last visited February 14, 2013). It is licensed to underwrite accident, health and life insurance. Id.  United Insurance is

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

a subsidiary of Defendant UHIC Holdings, Inc. and is the Claims Administrator and Plan Administrator of the Defendant Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 3(16)(A), as well as a fiduciary of the Defendant Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 3(21)(A).

16. UnitedHealthcare, Inc. UnitedHealthcare, Inc. is a subsidiary of Defendant United HealthCare Services, Inc. that provides "healthcare planning and management services." UnitedHealthcare, Inc., BLOOMBERG BUSINESSWEEK, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=27713266 (last visited February 14, 2013.). Its principal place of business is in Edina, Minnesota.

17. Defendants UnitedHealth, United HealthCare Services, Inc., UHIC Holdings, Inc., United Insurance, and UnitedHealthCare, Inc., are sometimes referred to herein collectively as the "United Defendants."

18. Upon information and belief, each of the United Defendants, either directly or through its subsidiaries and affiliates, is a claims administrator/fiduciary of the Plan, which is covered by ERISA.

19. Pfizer, Inc., the Plan Administrator and Sponsor, is a Delaware Corporation with its headquarters located at 235 East 42nd Street, New York, New York. During the relevant period, Pfizer's Benefits Administration Office was located at 100 Route 206 North, MS 120, Peapack, New Jersey 07977.

### IV. FACTS

20. Plaintiff Laura Watson ("Laura") was born with significant neurological and muscular disabilities. Watson's medical records show that she has a complex medical history that includes spinal muscular atrophy type II, severe restrictive lung disease, and chronic respiratory insufficiency.

21. Due to her condition, Laura requires around-the-clock skilled nursing care, including the use of a BI-Level Positive Airway Pressure ("Bi-PAP") for breathing, an IPPB machine to administer pulmonary medications and provide range of motion for her lungs, suctioning of her airway approximately 10-50 times each 8 hours at unpredictable intervals, and use of a gastronomy tube. Additionally, Laura uses as Cough Assistance Mechanical Insufflator-Exsufflator. She receives chest physical therapy, is monitored on a pulse oximeter to determine oxygen saturation levels, and receives oxygen therapy when deemed necessary.

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

22. Licensed nurses are with Laura 24 hours a day, 7 days a week to monitor these devices and monitor Laura's oxygen saturations, respiratory rate, and mobility of her extremities, and to monitor her state while sleeping.

23. Laura has received this level of care since in or around 1994, through commercial insurance, the Board of Education during her public school years, and Medicaid's "model waiver" program, a program that allows Medicaid coverage for atypical individuals, including disabled children.

24. Laura's parents, Donna and Jerry Watson, reside at 14 Cain Drive, Hillsborough, NJ 08844, and Donna Watson receives healthcare through her employment at Pfizer, Inc., such policy being insured and partially administered by Defendant United Healthcare Services, Inc. ("United Healthcare").

25. Most recently, Aetna's commercial policy provided care to Plaintiff Laura Watson under Johnson & Johnson's self-insured healthcare plan, under which Donna Watson received coverage during her time as an employee of Johnson & Johnson and under which Laura was eligible for coverage as a dependent.

26. On or about Spring 2010, Donna Watson left her position of employment at Johnson and Johnson, was hired by Pfizer, and become insured by United Healthcare under the Plan. Laura remained covered by Aetna under the Consolidated Omnibus Budget Reconciliation Act (COBRA) for a period of 29 months, pursuant to 29 U.S.C.S. § 1162(A)(i)(ii)-(viii).

27. On or about July 8, 2012, Laura should have been eligible for coverage under the Plan.

28. On or about July 17, 2012, Laura received an official denial letter from United Healthcare, in which United Healthcare justified denial of coverage for Laura's 24 hours a day/7 days a week of private duty skilled nursing care under the Plan on the basis that: "[Laura's] doctor requested coverage of private duty nursing. [Laura's] contract has certain situations in which such care is covered. It is not covered for watching for infection or checking blood pressure or temperature. It is not covered for accompanying someone to school. These services do not need a nurse to provide services. No other skilled services are identified." (See Exhibit B).

29. On or about July 18, 2012, Plaintiff Donna Watson received a call from a representative of United Healthcare identifying herself as "Lisa" who informed Donna that coverage for Laura's nursing

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

services for the period beginning July 8, 2012 and ending December 31, 2012, are not covered. United Healthcare asserted that such services are "custodial," and therefore, excluded from coverage under the Plan.

30. "Custodial Care" is defined under the Plan as services and provision of supplies that meet one of the following conditions: "care furnished mainly to train or assist in personal hygiene or other activities of daily living, other than to provide medical treatment or...care that can safely and adequately be provided by persons who do not have the technical skills of a covered health care professional." This exclusion of coverage for custodial coverage applies "regardless of who recommends, provides, or directs the care; where the care is provided; or whether or not the patient or another caregiver can be, or is being, trained to care for the patient. (See Summary Plan Description, pg. 63, attached as Exhibit A).

31. Laura's care is given for the purpose of providing crucial medical treatment. Laura requires 24 hours a day/7 days a week of nursing services rendered by highly skilled health care professionals.

32. Under the Plan, a "covered health service" is one that: is provided for the purpose of diagnosis or treatment of a sickness, injury, disease or symptom; is supported by national medical standards of practice; is consistent with the conclusions of prevailing medical research; is the most cost-effective method and yields a similar outcome to other available alternatives; and is not otherwise excluded by the Plan. (See Summary Plan Description, pg. 39, attached as Exhibit A).

33. Laura's required skilled nursing care is an eligible benefit called "Nursing Services," as listed on page 42 of the Plan. "Nursing Services" are described as "health services provided by a Registered Nurse (R.N.), Licensed Practical Nurse (L.P.N.), or Licensed Registered Nurse Practitioner (L.R.N.P.) who is practicing within his or her scope of license under the supervision of a physician." (See Summary Plan Description, pg. 42, attached as Exhibit A).

34. Laura's care was prescribed by her long-time physician, Dr. Howard Panitch a pulmonologist at Children's Hospital of Philadelphia.

35. Laura's medical care has consistently been and continues to be administered by a Registered Nurse and Licensed Practical Nurse. In the Affidavit of Denise Long, R.N., Director of Clinical Services at Maxim Healthcare Services, a former nursing service agency utilized by Plaintiff Laura Watson, Ms. Long

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

attested that "only highly skilled personnel can assess subtle clinical changes in Laura's behavior and physical state and .... unlicensed caretakers are not trained to complete full clinical assessments. (See Exhibit C).

36. Dr. Panitch has asserted that during an emergency, Laura's caregivers "must be highly skilled in assessment and intervention, unlike a personal care attendant or aide." Dr. Panitch has further noted that "a delay in treatment or an inaccurate assessment could lead to severe compromise or death." (See letter dated April 16, 2009, from Dr. Panitch to whom it may concern, attached as Exhibit D).

37. Dr. Panitch listed Laura's necessary care that requires skilled nursing as follows: a) continuous respiratory assessment; b) noninvasive mechanical ventilation; c) continuous pulse oximetry; d) administration of inhaled medications with a face mask and chamber three times daily, and increased for respiratory illness; e) oral suctioning as needed, every hour with illness;

f) cough assist, up to every 2 hours with illness; g) ongoing skin assessment, and prompt attention to prevent infection; etc. (See Exhibit D).

38. Laura's Home Health Certification and Plan of Care, for the certification period beginning on July 14, 2012 and ending September 11, 2012, noted that Dr. Panitch ordered in-home skilled nursing, to be performed by an R.N. or L.P.N. Laura's treatment plan requires a skilled nurse who can perform a head to toe clinical assessment during each shift, administer various medications, and assess Laura's levels of pain, neurological status, cardiopulmonary status, and respiratory function. (See Exhibit E).

39. In response to United Healthcare's July 17, 2012 letter denying coverage for 24 hours a day/7 days a week private duty, skilled nursing services, Dr. Panitch reiterated his order that licensed nurses be with Watson 24 hours a day, 7 days a week in order to monitor her medical devices, oxygen saturations, respiratory rate, mobility of extremities, and her state while sleeping. Dr. Panitch attests that Laura cannot forgo this continuous care, as forgoing said care is a risk to her life. Dr. Panitch requests that Laura be permitted to receive the same level of care she has been receiving for the past several years—24 hours a day/7 days a week skilled nursing care. He explains that "nothing has changed or improved in Laura's overall status that would justify decreasing her level of care. Laura's condition is a chronic one, and her needs remain unchanged." (See letter dated July 23, 2012, from Dr. Panitch to United Healthcare, attached as Exhibit F).

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

40. Any damage Laura would suffer as a result of not receiving around-the-clock skilled nursing care is immediate and irreparable in nature. In Dr. Panitch's July 23, 2012 letter to Defendant United Healthcare in response to Defendant United Healthcare's July 17, 2012 denial of coverage to Laura for 24 hours a day/7 days a week private duty skilled nursing services, Dr. Panitch notes that the definition of "custodial care," as set forth in the Plan, does not accurately describe Laura's ongoing medical care requirements. (See Exhibit F). Dr. Panitch stated: "While Laura does indeed require assistance with activities of daily living, she also requires multiple medical interventions that must be administered by a trained caregiver or by a skilled nursing professional. She requires twice daily administration of nebulized albuterol via IPPB device, which is to be increased in frequency up to every 4 hours during times of respiratory illness. She requires manual chest physiotherapy four times daily, PRN oral suctioning, and airway clearance treatment via cough assist device two to three times daily; these interventions are all to be administered more frequently during illness. Laura receives enteral nutrition and medication administration via gastrostomy tube. Laura requires non-invasive positive airway pressure via BIPAP device overnight….Laura requires daily physical assessment and routine monitoring of her cardiopulmonary status." (See Exhibit F).

41. In an August 1, 2012, letter in response to Defendant United Healthcare's July 17, 2012, denial of coverage, Dr. Gihan Tennekoon, a neurologist at Children's Hospital of Philadelphia, also asserted that Laura, a patient in the hospital's neuromuscular clinic, must receive 24 hours of skilled nursing 24 hours a day, 7 days a week. (See Exhibit G).

42. Dr. Tennekoon, who saw Laura at said clinic on August 1, 2012, noted that Laura's medical needs include, but are not limited to: Receipt of nutritional supplements via a gastronomy tube twice per day, which requires skilled nursing is required for tube placement, stoma care, feed administration, and assessment for signs of reflux or aspiration which would require immediate medical intervention; close monitoring of intermittent tachycardic episodes by a skilled nurse with knowledge sufficient to allow for observation of cardiac distress, dizziness, cyanosis, and oxygen saturation; constant airway management with a skilled nurse who is highly familiar with care involving Bi-Pap (Bi-level Positive Airway Pressure), IPPB machine to provide intermittent positive pressure to deliver pulmonary medication and to provide range of motion for lungs, an In-Exsufflator (coffaltor) twice daily as prescribed, oral suctioning 10-50 times every 8 hours;

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

constant monitoring with a pulse oximeter for oxygen saturations and respiratory rate; checking of breathing sounds three times per day; and monitoring skin for breakdown. (See Exhibit G).

43. In his August 1, 2012, letter to United Healthcare, Dr. Tennekoon explicitly stated that, "Laura needs skilled nursing to address her healthcare issues, as her needs cannot be handled by an aide or lay caregiver with a minimum level of instruction." Ultimately, "her needs are critical to maintaining her functioning and avoiding unnecessary hospital admissions or even risking a life-threatening event." (See Exhibit G).

44. In Defendant United Healthcare's July 17, 2012, letter denying coverage to Laura, United Healthcare improperly characterized Laura's care needs as "custodial." United Healthcare failed to address that many of the medical services required for Laura's survival each day are skilled medical services that are covered under the Plan.

45. On page 39 of Pfizer, Inc.'s Summary Plan Description ("SPD"), "covered health services" are defined as those that are generally provided for purposes of diagnosis or treatment of sickness, injury, disease, or symptom; supported by national medical standards of practice; consistent with the conclusions of prevailing medical research; the most cost-effective method that yields similar outcomes to other available alternatives, and not otherwise excluded by the Plan. (See Exhibit A).

46. On page 40 of Pfizer, Inc.'s SPD, "medically necessary services" are defined as those that are necessary for the symptoms and diagnosis or treatment of the condition, illness, or injury; provided for the diagnosis, or the direct care or treatment of the condition of the condition, illness, or injury; provided in accordance with generally accepted medical practice; not for the insured's convenience; the most appropriate level of medical care needed by the insured; accepted by a professional medical society in the United States as beneficial for the control or cure of the injury being treated; and furnished within the framework of generally accepted methods of medical management currently used in the United States. (See Exhibit A).

47. The SPD clearly states, on page 42, that nursing services provided by a Registered Nurse, a Licensed Practical Nurse, or a Licensed Nurse Practitioner are covered under the Plan. (See Exhibit A).

48. Other covered services necessary for Laura's medical care, include, but are not limited to: oxygen and its administration, and durable medical equipment ordered or provided by, or under the direction

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

of, a physician for use outside a hospital, skilled nursing facility or inpatient rehabilitation facility. (See Summary Plan Description, pg. 58, attached as Exhibit A).

49. On or about July 26, 2012, Dr. Lofton, a Salt Lake City, Utah physician who was hired by Defendant United Healthcare to conduct peer-to-peer review, made a determination that nursing services are not covered under Pfizer's Medical Plan ("the Plan"), which offers health insurance coverage through United Healthcare. Dr. Lofton's only basis for such determination was his conclusion that nursing services are not covered under the Plan, and that accordingly, Laura must be denied coverage. Dr. Lofton's determination, which ultimately led to United Healthcare's formal denial of coverage, directly contradicts United Healthcare's July 18, 2012, assertion that denial of coverage is proper since Laura's care is "custodial" and does not require a skilled medical professional.

50. Dr. Lofton's determination, after conducting peer-to-peer review, that nursing services are not covered under the Plan, is in clear contravention of the plain language of the Plan. The Plan clearly states that nursing services provided by a Registered Nurse, Licensed Practical Nurse, or Licensed Registered Nurse Practitioner who is practicing "within his or her scope of license under the supervision of a physician" warrant coverage. (See Summary Plan Description, pg. 42, attached as Exhibit A). It is important to note that Dr. Lofton never treated, nor ever met or saw, Laura.

51. Any characterization on behalf of United Healthcare of Laura's care as "custodial" according to the Plan's language is entirely inappropriate. Laura does not receive around-the-clock skilled, nursing services to "train or assist in personal hygiene or other activities of daily living," but rather to obtain necessary medical care for spinal muscular atrophy. The care she receives, which is highly complex and must be performed without error, cannot be "safely and adequately….provided by persons who do not have the technical skills of a covered healthcare professional." Rather, Laura requires skilled RNs or LPNs continuously throughout the day and during sleep to stay alive.

52. As a result of United Healthcare's improper denial of coverage for Laura's nursing services, Laura experienced immediate harm. On or about July 23, 2012, Laura received a Notice of Discharge from Maxim Healthcare Services, Inc., her longtime skilled nursing care provider, noting that as of July 26, 2012,

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

she would be discharged from Maxim's care. The reason provided by Maxim for the discharge was United Healthcare's failure to authorize coverage for private duty nursing services. (See Exhibit H).

53. On or about July 30, 2012, Laura appealed Defendant United Healthcare's denial of coverage for 24 hours a day/7 days a week private duty skilled nursing care.

54. On or about August 4, 2012, Plaintiff Laura Watson received a letter from United Healthcare, in which United Healthcare asserted that Laura's private duty skilled nursing care is not eligible for coverage under the Plan. (See Exhibit I). Therein, United Healthcare's explanation of its review of Laura's appeal, set forth as follows: "Based on clinical records and review of the Plan Coverage Determination Guidelines (CDGs) for Custodial and Skilled Services as well as Home Health Care and Private Duty Nursing, the Plan's Pre-Service Denial for Private Duty Nursing (T1000) for 24 hours/day x 7 days/week will remain UPHELD as not medically necessary. Review of the record indicates that the patient is receiving both custodial care….as well as supervision/support with therapies such as chest physical therapy, stoma care, BiPAP use, suctioning nebulizer therapy, and monitoring of overall health and condition. Based on the Plans Coverage Determination Guideline, non-medical individuals…can be taught to safely and effectively perform the required non-custodial therapies such as skin monitoring/care/repositioning, BiPAP management, medication administration through GT, enteral feeding via GT, ostomy care, respiratory therapy including IBBP, nebulizer, and suctioning." (See Exhibit I).

55. The aforementioned assertion by United Healthcare, that the enumerated list of skilled medical treatment can be provided by non-skilled professionals so long as they are "taught to safely and effectively perform the required non-custodial therapies," is an admission that Laura requires non-custodial, private duty nursing care, which is covered under the Plan.

56. In spite of denying all coverage for Laura's private duty skilled nursing care in the aforementioned August 4, 2012, letter, Defendant United Healthcare states that based on Laura's overall condition, "there is a medical necessity for periodic clinical supervision." Accordingly, United Healthcare explains that "the Plan would approve intermittent home health nursing assessments to periodically evaluate and review patient's overall clinical condition and response to therapy." Although United Healthcare admits that Laura is entitled to "periodic clinical supervision," United Healthcare has yet to provide said supervision to

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

Laura or define what constitutes "periodic clinical supervision." Since Defendant United Healthcare's denial of coverage, Plaintiffs Donna Watson and Jerry Watson have been forced to pay out of pocket for 24 hours a day/7 days a week skilled nursing services. Not one minute of "periodic clinical supervision" has been provided thus far by Defendant United Healthcare despite Laura's alleged entitlement to the same under the Plan.

57. On or about September 13, 2012, Defendant United Healthcare responded to Laura's request to provide all information relied upon by United Healthcare to render its denial of coverage for Laura's private duty skilled nursing care. (See Exhibit J). Pursuant to United Healthcare's own "Indications for Coverage" for private duty nursing included in United Healthcare's September 13, 2012, response, Laura meets the requirements for "skilled care" under the plan. As required, Laura's private duty skilled nursing services are provided in an outpatient setting and are ordered by physicians who constantly monitor her progress. Said nursing services are provided by a Registered Nurse or Licensed Practical Nurse, her treatment plan is reviewed at least periodically (no less than every 60 days) and updated by Dr. Panitch, the services she receives are skilled in nature, medical intervention is required more than every 2-3 hours, and the services are more cost effective at home versus an inpatient setting. Pursuant to the language explaining "Indications for Coverage" for private duty nursing services, Laura does indeed require "services on a continuous basis such as suctioning or hemodynamic monitoring to ensure immediate intervention."

58. United Healthcare further provides, under the "Skilled Observation and Assessment" section of the materials provided to Plaintiff Laura Watson on or about September 13, 2012, that "health services may be skilled when the unstable condition of the patient or the likelihood of change in the patient's condition requires clinically-trained personnel to identify and evaluate the patient's need for medical treatment. For example…a patient who unpredictably cannot manage upper airway secretions may be [entitled to] skilled care." Laura's medical records, which were submitted to Defendant United Healthcare upon the aforementioned July 17, 2012, notice of denial of coverage, clearly indicate that Laura requires 24 hours a day/7 days a week "skilled observation and assessment" for reasons that go far beyond Laura's inability to manage her upper airway secretions.

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

59. In a letter dated October 1, 2012, to Defendant United Healthcare, Dr. Panitch reiterated that for Laura, continuous, and not periodic, skilled nursing services are vital. Dr. Panitch explains that "even if non-medical individuals 'can be taught to safely and effectively perform the required non-custodial therapies' that [Laura] requires…the cornerstone of a safe discharge is to have skilled nursing care that is present for a substantial amount of the day to monitor the patient." (Exhibit K). Dr. Panitch stated that the implication in United Healthcare's August 4, 2012, letter, that Laura's parents or family members can be trained in some skilled care and subsequently "become surrogates for skilled nursing care," inappropriately characterizes skilled care as non-skilled care under United Healthcare's circular logic. (See Exhibit K).

60. In Dr. Panitch's October 1, 2012, letter to Defendant United Healthcare, Dr. Panitch noted that Laura has never received skilled nursing visits in lieu of shift care, and that the provision of "periodic" versus "continuous" private duty skilled nursing care should not start simply because Plaintiff Laura Watson has reached the age of 22. (See Exhibit K). In contrast to United Healthcare's assessment of Plaintiff Laura Watson's healthcare-based needs, Dr. Panitch maintains that continuous skilled nursing care is an absolute necessity for Laura. (See Exhibit K).

61. On or about October 10, 2012, Robert G. Kenny, Esq., legal counsel for Plaintiff Laura Watson, sent correspondence to Defendant United Healthcare to confirm that all available administrative remedies were exhausted. (See Exhibit L).

### VI.   CAUSES OF ACTION UNDER 29 U.S.C. § 1132(a)(1)(B)

62. The relevant section of ERISA provides that a "participant or beneficiary" of an employee benefit plan may bring a civil action "to recover benefits due to her under the terms of the plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan." 29 U.S.C. § 1123(a)(1)(B).

63. The provisions at issue governing coverage of private duty skilled nursing care in this case is part of an employee benefit plan governed by ERISA. Plaintiff Laura Watson is now, and was at all relevant times, a covered beneficiary under the Plan.

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

64. Under the terms of the Plan, Defendant United Healthcare has an obligation to provide coverage for 24 hours a day/7 days a week private duty skilled nursing services when Laura meets the eligibility requirements under the Plan. Defendant United Healthcare found that Laura Watson did not meet the requirements under the Plan.

65. Under the terms of the Plan, Laura is eligible to receive full coverage for 24 hours a day/7 days a week private duty skilled nursing care under the Plan. Laura's claim for 24 hours a day/7 days a week of private duty skilled nursing care, which was ordered as medically necessary by Dr. Panitch and Dr. Tennekoon, was wrongfully denied by Defendant United Healthcare on or about July 17, 2012, and said denial was affirmed on August 4, 2012.

66. Because of her medical condition, Laura requires continuous, 24 hours a day/7 days a week private duty skilled nursing care in order to be provided with the skilled medical services necessary to stay alive.

67. Laura has provided Defendants with more than satisfactory proof that she requires 24 hours a day/7 days a week, continuous, private duty skilled nursing care in accordance with the terms of the Plan. Therefore, Laura is eligible to receive benefits for the same under the Plan. Despite being required to do so in accordance with the Plan, Defendant United Healthcare has refused to cover any private duty skilled nursing care for Laura.

### A. CLAIM FOR RECOVERY OF PLAN BENEFITS

68. As a direct and proximate result of Defendants' breach of the Plan, Laura has been damaged in an amount equal to the benefits she would have received and would have continued to receive under the Plan.

69. Laura claims benefits under the Plan under 29 U.S.C. § 1132(a)(1)(B) and requests that the Court enter a judgment in her favor for back benefits and for consequential damages, and order Untied Healthcare to reinstate future benefits for private duty skilled nursing care in accordance with the terms of the Plan.

### B. CLAIM TO ENFORCE RIGHTS UNDER THE PLAN

70. Under the Plan, Laura has a right to receive continuous, 24 hours a day/7 days a week skilled nursing care. Defendant United Healthcare has violated Laura's rights under the plan because it wrongly

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

denied coverage for continuous private duty skilled nursing services. Defendant United Healthcare did acknowledge that Laura is entitled to "periodic intermittent" skilled nursing care in an August 4, 2012, letter to Laura, but Defendant United Healthcare never expounded on what constitutes "periodic" or "intermittent." (See Exhibit J). Defendant United Healthcare has never offered any private duty skilled nursing care to Laura despite its own admission that "periodic intermittent" care is warranted.

71. Watson has a right to benefits under the Plan and she seeks to enforce that right under 29 U.S.C. § 1132(a)(1)(B) and requests that the Court enter a judgment in her favor for back benefits and for consequential damages, and order Defendant United Healthcare to reinstate future benefits for 24 hours a day/7 days a week private duty skilled nursing care.

## C. CLAIM TO CLARIFY LAURA WATSON'S RIGHTS TO FUTURE BENEFITS UNDER THE TERMS OF THE PLAN

72. Under the terms of the Plan, Laura is eligible to receive continuous private duty skilled nursing services. Yet, Defendant United Healthcare has refused to pay current and future benefits.

73. Laura seeks to recover benefits due and to determine and clarify her rights under the plan to future benefits under 29 U.S.C. § 1132(a)(1)(B). Watson seeks an order of the Court clarifying, determining, and declaring the nature and extent of her right to future benefits under the Plan.

## V. CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. § 1109

74. Defendant United Healthcare, as a fiduciary under the Plan, owed a fiduciary duty to Laura to act solely for the interest of the Plan beneficiaries and participants. United Healthcare breached its fiduciary duty to Laura by failing to act in her interest, and instead, acted solely in the United Healthcare's own financial interest to the detriment of Laura.

75. United Healthcare took to deprive Laura of the benefits to which she is eligible under the Plan, and knowingly concealed its self-serving reasons to deny benefits under the Plan. Despite having knowledge of its breach of fiduciary duties to Laura, United Healthcare has made no effort to correct or remedy this breach.

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

WHEREFORE, Plaintiffs Laura Watson, Jerry Watson and Donna Watson DEMAND judgment against Defendant, United Healthcare, Inc., together with interest and costs of suit.

## VI. DECLARATORY JUDGMENT

76. Plaintiffs repeat and incorporate the allegations of the preceding paragraphs as though fully set forth herein.

77. In the event that this Honorable Court determines that the Plan is not governed by ERISA, Plaintiffs are entitled to a declaration from this Court of their rights pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-51 *et. seq*.

78. The actions of Defendant United Healthcare herein constitute an improper denial of coverage to Plaintiffs under the Plan and have caused and will continue to cause harm and damages to Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment under the provisions of N.J.S.A. 2A:16-50 *et. seq*.: (a) declaring that Defendant has breached the terms of the Plan and must provide Laura with coverage for 24 hours a day, 7 days a week nursing services, which constitutes crucial medical treatment and not "custodial care" pursuant to the terms of the Plan; (b) declaring that Defendant is required to pay for all costs of nursing care incurred by Plaintiffs thus far as a result of Defendants' failure to provide coverage, along with all future costs of nursing care when Laura's 24 hours a day/7 days a week private duty skilled nursing services are covered under the Plan; (c) an award of damages in an amount to be proven at trial; (d) interest, costs, and attorneys' fees and disbursements as allowed by law; and (e) such other legal and equitable relief as the Court may deem just and proper.

## VII. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

79. Plaintiffs repeat and incorporate the allegations of the preceding paragraphs as though fully set forth herein.

80. In the event that this Honorable Court determines that the Plan is not governed by ERISA, Plaintiffs request that this Honorable Court find that Defendant United Healthcare breached the Plan terms in

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

bad faith. Under New Jersey law, all contracts carry an implied term that the parties to the contract will act in good faith. Defendants' health insurance policy, as set forth in the Plan, carried and continues to carry such duty.

81. A careful review of Laura's medical history and related documentation thereof makes it clear that Laura's treatment is not "custodial," and thus, must be covered under Defendants' Plan. Laura does not received around-the-clock care skilled, nursing services to "train or assist in personal hygiene or other activities of daily living," but rather to obtain necessary medical care for spinal muscular atrophy. The care she receives, which is highly complex and must be performed without error, cannot be "safely and adequately…provided by persons who do not have the technical skills of a covered healthcare professional." Rather, Laura requires skilled R.N.s or L.P.N.s throughout the day and during sleep.

82. In light of the aforementioned facts, Defendants' refusal to provide coverage for 24 hours a day/7 days a week private duty skilled nursing care constitutes a bad faith breach of the terms of the Plan as well as a breach of the implied covenant of good faith and fair dealing. The actions and conduct of Defendants as set forth herein have caused, and will continue to cause, harm and damages to Plaintiff.

WHEREFORE, Plaintiffs requests the following relief: (a) an award of damages in an amount to be proven at trial; (b) punitive damages; (c) interest, cost of suit, and attorneys' fees, and (d) such other legal and equitable relief as the Court may deem just and proper.

### VIII.   JURY DEMAND

Please be advised that Plaintiffs Laura Watson, Jerry Watson and Donna Watson, hereby demands a trial by jury on all issues triable by a jury pursuant to Federal Rules of Civil Procedure 38. For all issues not triable by a jury as a matter of right, Plaintiffs respectfully request that the Court submit the issues to a jury for an advisory verdict under Federal Rule of Civil Procedure 39.

### IX.   PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs Laura Watson, Jerry Watson, and Donna Watson respectfully request the Court grant the following relief:

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ

a. AWARD Plaintiffs back benefits under the Plan for private duty skilled nursing care in an amount equal to the benefits Plaintiff Laura Watson would have received under the Plan;

b. ORDER Defendant United Healthcare to prospectively reinstate Plaintiff Laura Watson's benefits under the Plan;

c. ORDER Defendant to pay benefits under the terms and conditions of the Plan;

d. DECLARE and ORDER the nature and extent of her right to future benefits under the Plan;

e. AWARD damages for breach of fiduciary duties;

f. AWARD Plaintiffs attorneys fees and costs to bring this civil action;

g. AWARD Plaintiffs post-judgment and pre-judgment interest on all amounts recovered; and

h. AWARD Plaintiffs all other relief in law or equity to which they may be justly entitled, including restitution for lost benefits, consequential damages, and, when permitted, punitive damages.

## X.   CERTIFICATION

Pursuant to Rule 4:5-1, the undersigned hereby certifies that at the time of filing of this pleading, the matter in controversy is not the subject of any other action pending in any Court and/or Arbitration proceeding.

I also understand that at this time there are no other parties to my knowledge that should be named in this lawsuit.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
Attorneys for Plaintiffs Laura Watson, Jerry Watson and Donna Watson

*s/ Robert G. Kenny*
By: _____
ROBERT G. KENNY

Dated: February 15, 2013

HOAGLAND, LONGO
MORAN, DUNST &
DOUKAS, LLP
ATTORNEYS AT LAW

NORTH JERSEY
40 PATERSON ST
PO BOX 480
NEW BRUNSWICK, NJ

SOUTH JERSEY
701 WILTSEY'S MILL RD
SUITE 202
HAMMONTON, NJ